# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**SILO RESTAURANT INC., et al.,**

       **Plaintiffs,**

**v.**                                    **Case No. 5:18-CV-1176-JKP**

**ALLIED PROPERTY AND
CASUALTY INSURANCE COMPANY,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

In this first party insurance action, a tenant/insured, Silo Restaurants, Inc. ("Silo"), and the owner of the property, Phil Dyer, who the applicable insurance policy also lists as mortgagee and payee, have sued the insurance company, Allied Property and Casualty Insurance Company ("Allied"), under various theories for hail damage to the insured property's roof in 2016. The Court has three motions under consideration: (1) Defendant Allied Property and Casualty Insurance Company's Motion for Summary Judgment (ECF No. 10); (2) Plaintiffs' Written Objections to Defendant's Summary Judgment Evidence, Exhibit B and Motion to Strike Defendant's Summary Judgment Evidence, Exhibit B (ECF No. 19); and (3) Plaintiffs' Motion for Leave to File Plaintiffs' Surreply to Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 22). The summary judgment motion is fully briefed, including evidence submitted by both sides.[1] Defendant has responded to the motion to strike, but Plaintiffs have not filed a reply

---

[1] Defendant has attached three exhibits to its summary judgment motion: (A) the insurance policy itself; (B) a declaration of its Catastrophe Claim Manager, Dwayne Bailey, with nine sub-exhibits (B-1 through B-9); and (C) an October 5, 2018 email. Defendant characterizes this as an email sent at 4:19 pm on October 5, 2016, but the email clearly reflects that it was sent on "Friday, October 5, 2018 4:19pm." October 5 was a Wednesday in 2016 and a Friday in 2018. Plaintiffs attach five summary judgment exhibits to their response: (A) declaration of an attorney and custodian of records verifying the authenticity of five sub-exhibits (A-1 through A-5); (B) Declaration of Silo Representative Patrick Richardson ("Richardson Decl."); (C) Declaration of Phil Dyer; (D) Declaration of Don O. Staples; and (E) Declaration of Neil B. Hall.

brief. Defendant has not responded to the motion for leave to file surreply. Regardless of the briefing filed, all motions are ready for ruling.

## I. BACKGROUND

The factual background is essentially undisputed. Allied issued an insurance policy, with effective dates March 17, 2016 to March 17, 2017, to Silo to cover a restaurant located at 1133 Austin Highway in San Antonio, Texas. *See* Premier Businessowners Policy No. ACP BPFC 7245584525 [hereinafter "Policy"]. Silo is the named insured. *Id.* at 2, 13.[2] Dyer owns the property, leases it to Silo who "has a duty to maintain fire and casualty insurance on the property for [Dyer's] benefit," and Dyer is "included in that policy as a mortgagee and loss payee." Decl. Dyer ¶ 2; *see also* Policy at 16 (showing Dyer listed as mortgagee). Patrick Richardson is President of Silo and handles all daily operations, including obtaining insurance to comply with the lease obligations with Dyer. Richardson Decl. ¶¶ 2-3. Silo engaged Insurance One Agency to act on its behalf and Ryan Hutchinson of that entity was "the writing agent for Silo." *See* Ex. B-8. The policy contains a limitations provision that applies to the contractual claims of Plaintiffs. *See* Policy at 157.

During the period of coverage, a hailstorm affected the insured property. On August 25, 2016, Delia Willis, an insurance agent with Insurance One Agency, L.C., acting on behalf of Silo and as agent for Richardson, submitted a Property Loss Notice to Defendant alleging hail damage to the roof and air-conditioning ("AC") unit of the property. *See* Ex. B-1; Richardson Decl. ¶ 9. Defendant assigned Terry Nichols as the adjuster on the claim. Decl. Bailey ¶ 3. Following an initial inspection, Nichols engaged EFI Global to inspect and report on possible hail damage to the property. *Id.* ¶ 4; Ex. B-3. Following the engineer's inspection, Defendant agreed to pay Silo and Dyer (as a mortgagee) for covered damages to an AC unit. Ex. B-4.

---

[2]Page numbers refer to the stamped page number in the lower right-hand corner of Defendant's exhibits.

EFI sent its report to Nichols on September 28, 2016. Ex. B-5. Relying on that report, Nichols sent the following email to Richardson and his Insurance One Agent, Ryan Hutchinson:

> Please see attached letter and engineer's report. Based on the engineer's findings I am unable to help you on the roof as no hail damage was found to the flat roof, rather it is leaking due to wear and tear at seams, penetrations, etc. Let me know if you have any questions.

Ex. B-6. The attached letter informed Richardson and Hutchinson that coverage was denied for hail damage to the roof and provided reasons for the denial. *See* Ex. B-7. The report from EFI concluded that (1) the property was exposed to hail resulting in visible "spatter marks on the sheet metal roofing panels over the silo, distress to AC fins, dents to light gauge metal roof vents, and spatter marks on mechanical equipment," but "[o]therwise the roof and associated components were found to be free of hail related damage"; (2) the "[s]patter marks to the sheet metal roofing panels are cosmetic in nature and does [sic] not constitute functional damage"; and (3) there were observed "potential sources of water infiltration" but they were "not storm related damage." Ex. A-1 at 7.

The day he received the claim denial, Hutchinson sought clarification from Nichols, but did not include either Plaintiff on the email. *See* Ex. B-8. Nichols explained:

> There is a lot of difference in thin aluminum a/c fins and commercial roofing material made of tar and gravel and rubber compounds. I did not see hail damage to the roof and that is why I had the engineer look at it. If they think differently, they can get their own expert and submit it to us to consider. Basically, what I saw was an old roof that needs to be replaced.

Ex. B-9.

Defendant closed the case file on November 3, 2016. *See* Ex. B-2 at 167. Nichols noted: "Kept claim open for a period of time in case of further actions . . . regarding roof. I am closing claim at this time." *Id.*

Because leaks later began to appear in the same areas of the roof, Richardson contacted another roofer for repairs with approval from Dyer. Richardson Decl. ¶ 20; Decl. Dyer ¶ 7. On October 5, 2018, Richardson informed Dyer that the newly hired roofer disagreed with the prior denial of hail damage claim. Richardson Decl. ¶¶ 21-22; Decl. Dyer ¶ 8.

Plaintiffs commenced this action by filing an Original Petition in state court on October 8, 2018. *See* Orig. Pet. (ECF No. 1-1). Defendant timely removed the action to this Court the next month based upon diversity of citizenship. *See* Notice of Removal, (ECF No. 1).

On April 30, 2019, Defendant filed its motion for summary judgment on grounds that Plaintiffs untimely commenced this action under the insurance policy and applicable statutes of limitations. Plaintiffs first responded with an unopposed motion for leave to amend their complaint and filed the amendment with court permission. In their amended complaint, Plaintiffs assert five theories of liability and two defenses to the asserted limitations bar. *See* Pls.' First Am. Compl. (ECF No. 13) at 7-16. Following the filing of the amended complaint, Plaintiffs responded directly to the motion for summary judgment and the parties filed the other motions and briefing currently before the Court. All motions are ripe for ruling.

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, the Court must "apply Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Accrual

of a claim or cause of action is also governed by state law. *See Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (per curiam) (applying Texas law on accrual in diversity case).

Although "federal law, rather than state law, invariably governs procedural matters in federal courts," *Camacho v. Tex, Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006), classifying "law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor," *Gasperini*, 518 U.S. at 427. But when a matter is "covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic," because "if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." *Id.* at 427 n.7 (citing *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965); *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987)). As will be discussed in more detail later in this memorandum opinion, one such procedural rule that is governed by federal law is "the federal rule of summary judgment procedure." *FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993).

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the Texas Supreme Court that "'precisely' resolves the legal issue, federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The

federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

The Court will first address two procedural motions before considering the summary judgment motion.

### III. MOTION TO STRIKE

Although Plaintiffs have moved to strike a declaration presented by Defendant in support of its motion for summary judgment, their primary thrust is to provide written objections to the declaration. They state no rule or other basis for striking the evidence. They merely urge the Court to strike the evidence as "not proper summary judgment evidence."

"Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing a motion to strike," but amendments to the Federal Rules of Civil Procedure changed that practice. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam). "As amended in December 2010, Fed. R. Civ. P. 56(c)(2) makes motions to strike unnecessary to challenge evidence presented in the summary judgment context." *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2018 WL 6181493, at *8 n.8 (N.D. Tex. Nov. 27, 2018). Accordingly, the Court denies the motion to strike as unnecessary. It will instead consider the filing as Plaintiffs' Rule 56(c)(2) objections and will rule on such objections as necessary.

Although the Court cited the alleged objectionable declaration in the background section, it did so only for matters not in dispute. Furthermore, Plaintiffs did not object to the cited portions of the declaration. In addition, as noted in footnote 1 and the motion to strike, Defendant and the declarant have misread the date of the email attached as Ex. C to the motion for summary judgment. That objection is well-taken as to that email and the Court does not rely on Ex. C or

the declarant's statements about that exhibit. Because the Court does not consider any objectionable portions of the declaration, the Court deems all other objections moot.

### IV. MOTION FOR LEAVE TO FILE SURREPLY

Plaintiffs move for leave to file a surreply purportedly to respond to new arguments raised for the first time by Defendant in its reply in support of its motion for summary judgment. They state that "there are several new arguments made of which is necessary for Plaintiffs to succinctly address with supporting case law." Neither the motion nor the proposed surreply identify with any specificity the new arguments purportedly made in the reply brief. The proposed submission, furthermore, appears to be little more than rehashing of prior arguments and submitting various case law in support.

As a general practice, neither the Federal Rules of Civil Procedure nor the local rules of this Court permit the filing of a surreply. But the local rules do contemplate a party seeking leave to file a post-reply submission. *See* W.D. Tex. Civ. R. 7(f)(1). Furthermore, because defendant has filed no response to the motion for leave, the Court could grant the motion as unopposed. *See* W.D. Tex. Civ. R. 7(e)(2). While such practice is permissible, resorting to it in the context of leave to file a surreply may unnecessarily downplay the importance of a proper response to a motion as well as permitting briefing that is simply unwarranted.

Although surreplies "are heavily disfavored," it is within the sound discretion of the courts to grant or deny leave to file such additional briefing. *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (per curiam) (quoting *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011)). Because "the scope of the reply brief must be limited to addressing the arguments raised" in the response or memorandum in opposition, *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010) (citation omitted), and "it is improper for the movant to sandbag and raise wholly

new issues in a reply memorandum," *Weems*, 2011 WL 2731263, at *1, the need for post-reply briefing should be rare. As aptly explained in *Weems*,

> This court's experience, shared by others in reported decisions, is that surreplies often amount to little more than a strategic effort by the nonmovant to have the last word on a matter. The fourth brief usually just repeats arguments from the memorandum in opposition and serves only to delay resolution of the underlying motion. Accordingly, it is proper to deny a motion for leave to file a surreply where the party fails to demonstrate exceptional or extraordinary circumstances warranting the relief sought. In other words, in seeking leave to file a surreply brief, a party must identify the new issues, theories, or arguments which the movant raised for the first time in its reply brief.

*Id.* (citations omitted).

Of course, as recognized by the Fifth Circuit, "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). Such waiver often reduces a need for a sur-reply. Nevertheless, granting leave to file a sur-reply in extraordinary circumstances "on a showing of good cause" is a viable alternative to the general practice to summarily deny or exclude "all arguments and issues first raised in reply briefs." *Layne Christensen Co. v. Bro-Tech Corp.*, No. CIV.A. 09-2381-JWL, 2011 WL 3880830, at *1 n.1 (D. Kan. Aug. 31, 2011) (citation omitted).

In this case, however, Plaintiffs have simply made conclusory statements about new arguments without identifying any new issue, theory, or argument first raised in the reply brief. They have not shown exceptional or extraordinary circumstances that warrant a surreply.  Nor have they shown good cause for the relief requested. To the extent that Defendant has asserted a new argument in reply, the Court either will not consider it in making its ruling on the motion for summary judgment or its consideration does not prejudice Plaintiffs. For these reasons, the Court denies the motion for leave to file a surreply.

## V. MOTION FOR SUMMARY JUDGMENT

Defendant presents a single, legal basis for seeking summary judgment. It argues that the

applicable statutes of limitations expired for all asserted claims before Plaintiffs filed this action in state court on October 8, 2018. In response, Plaintiffs argue that some claims are timely even using Defendant's accrual date and assert the discovery rule and fraudulent concealment doctrine to counter Defendant's limitations defense. They also argue that a lack of payment or notice to Dyer delays the accrual date as to him.

## A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When seeking summary judgment on an affirmative defense, such as claims being barred

---

[3]The summary judgment standard "remains unchanged" despite 2010 amendments to Fed. R. Civ. P. 56 that replaced "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.). Although the standard remains the same, the Court utilizes the amended terminology even when relying on caselaw that predates the amendments.

by a statute of limitations, the movant "must establish beyond peradventure" each essential element of the defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *accord Hagan v. Mazda Motor Co. of Am., Inc.*, 690 F. App'x 242, 243 (5th Cir. 2017) (per curiam) ("Under Texas law, a defendant moving for summary judgment on an affirmative defense must irrefutably establish its elements.").

When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant has carried the burden to establish that "claims are time-barred as a matter of law," the burden shifts to the non-movant to establish a genuine dispute of material fact on the timeliness of asserted claims. *Dommert v. Raymond James Fin. Servs., Inc.*, No. 1:06-CV-102, 2009 WL 275440, at *8 (E.D. Tex. Feb. 3, 2009) (adopting recommendation of Mag. J.). With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). Additionally, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

## B. Summary Judgment Analysis

In general, the parties agree on the facts and timeline presented. Based on those facts and timeline, the Court must determine, as a matter of law, when Plaintiffs' claims accrued and whether they are untimely under the applicable statutes of limitations. Such determination may

include considering Plaintiffs' assertions of the discovery rule and fraudulent concealment doctrine.

### 1. <u>Applicable Limitations Periods</u>

In their amended complaint, Plaintiffs assert five theories of liability: (1) breach of contract; (2) violations of Section 542 of the Texas Insurance Code through failures to promptly pay the claim under Tex. Ins. Code Ann. §§ 542.055, 542.056, and 542.058; (3) violations of the Deceptive Trade Practices and Consumer Protection Act ("DTPA"), namely Tex. Bus. & Com. Code Ann. § 17.46(b)(2), (5), (7), (9), (12), (20), and (24); (4) unfair insurance practices in violation of Section 541 of the Texas Insurance Code, specifically Tex. Ins. Code Ann. §§ 541.060(a)(1), (2)(A), (3), (4), and (7); and (5) breach of common law duty of good faith and fair dealing. *See* Pls.' First Am. Compl. at 7-15. The Court independently determines the applicable statute of limitations for each type of claim.

"A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing and applying the residual limitations period set out in Tex. Civ. Prac. & Rem. Code Ann. § 16.051). But Texas law permits parties to contract for a specific limitations period so long as it is not less than two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.070(a). Through the applicable insurance policy, the parties in this case contracted for a limitations period of two years and one day. More specifically, the contract requires that "[t]he action [be] brought within 2 years and one day from the date the cause of action first accrues" and further states that "[a] cause of action first accrues on the date of the initial breach of our contractual duties alleged in the action." Policy at 157. The parties do not dispute that this is a proper contractually agreed limitations period under Texas law. However, they do disagree on how to calculate the limitations period.

The parties also agree that the Policy's limitation period applies to Plaintiffs' prompt-payment claims under Chapter 542 of the Texas Insurance Code. *Compare* Mot. at 9 n.43; Reply at 2 *with* Resp. at 5-6. Indeed, because Section 542 of the Texas Insurance Code does not include a limitations provision and is a contract-based remedy in any event, "it is also subject to appropriate limitation by the insurance policy." *Chapa v. Allstate Tex. Lloyds*, No. 7:15-CV-30, 2015 WL 3833074, at *3 n.45 (S.D. Tex. June 22, 2015); *accord Nance v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00538-JRG, 2017 WL 7052146, at *3 (E.D. Tex. Nov. 21, 2017). Had the policy not set a contractual limitations period, the Court would apply the residual limitations period of four years set out in Tex. Civ. Prac. & Rem. Code Ann. § 16.051.[4]

The parties further agree that a two-year limitations period applies to Plaintiffs' other claims. *Compare* Mot. at 9 & n.43; Reply at 10 *with* Resp. at 6-20. Texas law supports that position. Claims "for breach of the duty of good faith and fair dealing must be brought within two years of the date on which the cause of action accrued." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). A two-year statute of limitations also applies to claims under Chapter 541 of the Texas Insurance Code. *See* Tex. Ins. Code Ann. § 541.162(a). Section 541.162 provides:

> (a) A person must bring an action under this chapter before the second anniversary of the following:
>
> > (1) the date the unfair method of competition or unfair or deceptive act or practice occurred; or
> >
> > (2) the date the person discovered or, by the exercise of reasonable

---

[4] "While there is some disagreement over whether the statute of limitations period for prompt payment claims is two or four years," *Hendrix v. Hartford Life Ins. Co.*, No. 3:12-CV-2643-M, 2013 WL 979285, at *2 (N.D. Tex. Mar. 13, 2013) (comparing *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 3:05-V-0816-K, 2006 WL 770424, at *2 (N.D. Tex. Mar. 27, 2006) (two-year limitations period) with *Rx.com, Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 563-64 (S.D.Tex.2006) (four-year limitations period)), the Court finds the more persuasive interpretation lies with *Rx.com* as aptly concluded in *Hookham v. Penn-Am. Ins. Co.*, No. 6:16-CV-316-RP-JCM, 2016 WL 8674387, at *3 (W.D. Tex. Nov. 22, 2016) (recommendation of Mag. J.) *adopted by* 2016 WL 8674065 (W.D. Tex. Dec. 14, 2016).

> diligence, should have discovered that the unfair method of compe-
> tition or unfair or deceptive act or practice occurred.

> (b) The limitations period provided by Subsection (a) may be extended for 180
> days if the person bringing the action proves that the person's failure to bring the
> action within that period was caused by the defendant's engaging in conduct sole-
> ly calculated to induce the person to refrain from or postpone bringing the action.

"Similarly, the DTPA sets a two-year period of limitations for claims brought under Sub-

chapter E, Deceptive Trade Practices and Consumer Protection, which encompasses § 17.41

through § 17.63." *Life in Christ Fellowship of Abilene v. Allied Prop. & Cas. Ins. Co.*, No. 1:17-

CV-0117-BL, 2018 WL 1157764, at *6 (N.D. Tex. Jan. 9, 2018) (recommendation of Mag. J.)

(citing Tex. Bus. & Com. Code Ann. § 17.565 (effective Sept. 1, 1987)) *accepted by* 2018 WL

1157944 (N.D. Tex. Mar. 2, 2018). Section 17.565 states in full:

> All actions brought under this subchapter must be commenced within two years
> after the date on which the false, misleading, or deceptive act or practice occurred
> or within two years after the consumer discovered or in the exercise of reasonable
> diligence should have discovered the occurrence of the false, misleading, or de-
> ceptive act or practice. The period of limitation provided in this section may be
> extended for a period of 180 days if the plaintiff proves that failure timely to
> commence the action was caused by the defendant's knowingly engaging in con-
> duct solely calculated to induce the plaintiff to refrain from or postpone the com-
> mencement of the action.

Despite the variety of claims asserted, the applicable statute of limitations is either two

years for the extracontractual claims or two years and a day for Plaintiffs' contractual claims.

## 2. Burdens of Proof

Under Texas law, a "defendant moving for summary judgment on the affirmative defense

of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v.*

*Harrison Cnty. Hous. Fin. Corp. [hereinafter KPMG]*, 988 S.W.2d 746, 748 (Tex. 1999) (citing

*Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997) (per curiam)). In that con-

text, *KPMG* further stated:

> Thus, the defendant must (1) conclusively prove when the cause of action ac-

crued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.

988 S.W.2d at 748 (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988)). In Texas state courts, the summary judgment burden is on the defendant to negate the discovery rule regardless of whether the rule has been codified into a statute. *See Burns*, 786 S.W.2d at 267-68 (allocating that summary judgment burden to defendant on a judicially created applicable discovery rule for legal malpractice as well as the DTPA codified version); *Eshleman v. Shield*, 764 S.W.2d 776, 777 (Tex. 1989) (per curiam) (allocating that summary judgment burden to defendant on a DTPA claim).

Citing *Woods* and *Eshleman*, *Burns* placed the burden on the defendant to negate the discovery rule in both contexts, further clarified that, "in this summary judgment setting, [the defendant] is the party who bears the burden of negating the discovery rule as a matter of law," and stated in footnote 2 that, to the extent prior cases "placed the summary judgment burden on the party relying on the discovery rule, they were effectively overruled by this court's decision in *Woods*." 786 S.W.2d at 267-68 & n.2. Furthermore, as recognized in *Woods*, while Texas law places the summary judgment burden on the defendant to negate the discovery rule, it also provides that "the party seeking to benefit from the discovery rule to avoid the statute of limitations has the burden of pleading and proving the requirements of the discovery rule in a trial on the merits." 769 S.W.2d at 515-17 & n.2. Texas courts place this trial burden on the plaintiff even when the discovery rule has been codified into a statute. *See Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639 (Tex. App. – Houston [14th Dist.] 2005, pet. denied) (addressing burden on DTPA claim); *Jampole v. Matthews*, No. 01-96-00028-CV, 1997 WL 414637, at *7 (Tex. App. -- [1st

Dist.] July 24, 1997, writ denied) (not designated for publication) (addressing DTPA and other claims).

Notably, under Texas law, the plaintiff always retains the burden to come forward with evidence to support an assertion of fraudulent concealment. *See Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977) (per curiam). Texas law does not require defendants to negate an assertion of that defense to the statute of limitations. *See id.*

Despite Texas law placing the summary judgment burden on defendants to negate the discovery rule, plaintiffs have the burden to establish each element of asserted defenses to the statutes of limitations as a matter of federal procedural law. *See FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) (declining to place burden on defendant to negate the discovery rule); *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1436 (N.D. Tex. 1997) (same). "No matter what the Texas procedural rule might be, federal summary judgment procedure places the summary judgment burden on the parties having the trial court burden, that is, the plaintiffs" for their defenses to the statutes of limitations. *Welk v. Simpkins*, No. 4:09-CV-456-A, 2010 WL 883000, at *5 (N.D. Tex. Mar. 10, 2010), *aff'd*, 402 F. App'x 15 (5th Cir. 2010). Absent the requirement to negate the discovery rule, Texas law merely requires the defendant to prove when the claims accrued without considering whether an asserted defense may defer the accrual date. *See KPMG*, 988 S.W.2d at 748.

The Court notes that the "law is not exactly clear as to which party bears the burden regarding the discovery rule exception to the statute of limitations." *Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 731 (E.D. Tex. 2002); *accord Aviall Servs., Inc. v. Cooper Indus., LLC*, 694 F. Supp. 2d 567, 574 n.3 (N.D. Tex. 2010) (recognizing the lack of clarity but the court found it "need not predict how this uncertainty will be resolved" because defendant failed on its limita-

tions defense and prevailed on the contract claims "regardless who ha[d] the burden on the discovery rule"). The Fifth Circuit has issued conflicting opinions. *Compare Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (relying on *KPMG* to place burden on defendant to negate the discovery rule) *with Shrader & York*, 991 F.2d at 220 (considering issue in context of summary judgment and placing burden on plaintiff).[5] Without discussion, the *Achee* court "defer[red] to recent precedent and proceed[ed] under the assumption that Defendants have the burden of negating the applicability of the discovery rule." 197 F. Supp. 2d at 731.

"However, it is black letter law that one panel cannot overturn a prior panel." *Biziko v. Van Horne*, No. 1:16-CV-0111-BP, 2019 WL 3928575, at *8 n.7 (N.D. Tex. Aug. 20, 2019) (recommendation of Mag. J.) (citing *Macktal v. U.S. Dep't of Labor*, 171 F.3d 323, 328 (5th Cir. 1999)) *adopted by* 2019 WL 4192458 (N.D. Tex. Sept. 4, 2019). In the absence of "an intervening change in the law," such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit sitting] en banc," the earlier circuit precedent applies. *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). In diversity cases, furthermore, "a significant change in the applicable state's substantive law" qualifies as an intervening change in the law and overrules prior precedent. *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1373 (5th Cir. 1994). Thus, in diversity cases, the Fifth Circuit follows "subsequent state court decisions that are clearly contrary to" a prior Fifth Circuit decision. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017) (quoting *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535, 537 (5th Cir. 1985)).

*Texas Soil Recycling, Inc.* did not note any intervening change in law to justify its departure from *Shrader & York*. Although it cites to *KPMG*, that case is not clearly contrary to *Shrad-*

---

[5]The Fifth Circuit has also placed the burden on plaintiff in the context of a motion for judgment as a matter of law following a jury trial. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 214 (5th Cir. 1999). Although *Achee* mentions this case as adding to the confusion, its different context puts it in line with Texas and federal procedures.

*er & York*; instead, it merely sets out the Texas burdens of proof on summary judgment and relies on cases that predate *Shrader & York*. To the Court's knowledge, there is no intervening change in law that warrants deferring to the more recent precedent. Accordingly, *Shrader & York*, as the earlier circuit precedent, controls.

Thus, Defendant has the burden to show all essential elements of its statute of limitations defense. Because defendants do not have the burden of proof on the discovery rule at trial, *see Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988); *Weaver v. Witt*, 561 S.W.2d 792, 793 n.2 (Tex. 1977) (per curiam); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639 (Tex. App. – Houston [14th Dist.] 2005, pet. denied), the discovery rule is not an essential element whether the rule is judicially created or has been codified into a statute. Accordingly, to carry its summary judgment burden, Defendant "must establish beyond peradventure that [each] cause of action in question accrued" outside the applicable limitations period. *Wetsel v. State Farm Lloyds Ins. Co.*, No. 3:02-CV-0510-D, 2002 WL 1592665, at *3 (N.D. Tex. July 18, 2002). And if Defendant carries its burden to show that Plaintiffs' claims are untimely as a matter of law, then Plaintiffs have the burden to show a material factual dispute regarding the timeliness of their claims, which may include a showing that the claims are timely through the discovery rule or the fraudulent concealment doctrine.

### 3. <u>Calculating Applicable Limitations Periods</u>

The date each claim or cause of action accrued is crucial for calculating each limitations period. Under Texas law, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Therefore, "a cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not

discovered until later, and even if all resulting damages have not yet occurred." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Texas courts often refer to this as the "legal injury rule." *See, e.g.*, *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

"Generally, in first-party insurance cases such as this one, 'limitations begin to run on the date coverage is denied.'" *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 311 (5th Cir. 2019) (quoting *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011), which in turn cites *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828-29 (Tex. 1990)). This normally means that "the cause of action will accrue on the date the insured receives a denial of coverage notice from the insurance carrier." *Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co.*, 812 S.W.2d 647, 652 n.3 (Tex. App. – Dallas 1991, writ denied) *disapproved of on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998). The denial-date for coverage is typically "a question of law" but "when 'there is no outright denial of a claim, the exact date of accrual of a cause of action . . . should be a question of fact to be determined on a case-by-case basis.'" *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003) (quoting *Murray*, 800 S.W.2d at 828 n.2).

Given its summary judgment burden, Defendant must conclusively prove when each claim or cause of action accrued. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Once the defendant establishes the accrual date for each claim, the task is to calculate the limitations period consistent with each applicable limitations provision. Defendant argues that all of Plaintiffs' claims accrued on October 5, 2016, when it denied Plaintiffs' hail damage claim for the roof. For their contractual claims, Plaintiffs argue that the claims are timely even with that accrual date. But they argue that the discovery rule and fraudulent con-

cealment doctrine sufficiently defer the accrual date to make all their claims timely. They also point out a lack of notice to Plaintiff Dyer that impacts the date of accrual of his claims.

For at least some claims, the parties dispute how to calculate the limitations period. To the extent this is an issue of substantive state law, the Court must look to Texas state decisions and, if the Texas Supreme Court has not specifically addressed the issue, this Court must make an *Erie* guess as to how the Texas Supreme Court would decide the issue. If the issue is one of federal procedure, however, this Court looks to the Federal Rules of Civil Procedure, which "govern the procedure in all civil actions and proceedings in the United States district courts," with exceptions not relevant here. *See* Fed. R. Civ. P. 1.

With respect to computing time, Fed. R. Civ. P. 6(a) provides guidance for the federal courts. That rule provides in pertinent part:

> The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> > (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time:
> >
> > > (A) exclude the day of the event that triggers the period;
> > >
> > > (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
> > >
> > > (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Although the rule speaks broadly in terms of "any statute," it "is not expressly applicable to state statutes of limitation, but . . . the principles embodied in the rules may be utilized, by analogy, in a diversity case" when applying the rule does not conflict with state practice. *Rothe v. Ford Motor Co.*, 531 F. Supp. 189, 192-93 (N.D. Tex. 1981); *accord Singh v. Wal-Mart Stores*

*Inc.*, No. 1:17-CV-1120-RP-ML, 2019 WL 2572569, at *3 (W.D. Tex. Jan. 3, 2019) (recommendation of Mag. J.) *adopted in part by* 2019 WL 1324135 (W.D. Tex. Mar. 25, 2019).

Notably, the Computation of Time provision of the Texas Rules of Civil Procedure, Tex. R. Civ. P. 4, is very similar to its federal counterpart:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday. Saturdays, Sundays, and legal holidays shall not be counted for any purpose in any time period of five days or less in these rules, except that Saturdays, Sundays, and legal holidays shall be counted for purpose of the three-day periods in Rules 21 and 21a, extending other periods by three days when service is made by mail.

However, the Texas Rules of Civil Procedure "may not abridge, enlarge or modify the substantive rights of a litigant." Tex. Gov't Code Ann. § 22.004. Texas courts have relied upon a similar prohibition to hold "that the Supreme Court of Texas did not have the authority to alter the spoken words of the Texas Legislature." *Rothe*, 531 F. Supp. at 191 (citing *Kirkpatrick v. Hurst*, 484 S.W.2d 587, 589 (Tex. 1972); *Fulghum v. Baxley*, 219 S.W.2d 1014 (Tex. Civ. App. – Dallas 1949, no writ )).[6] Because "Texas has an established policy of strict construction of the relevant limitations period," the *Rothe* court "decline[d] to apply the federal rule by analogy." *Id.* at 193.

In 1985, the Texas legislature enacted Tex. Civ. Prac. & Rem. Code Ann. § 16.072, which addresses when the last day of a limitations period "falls on a Saturday, Sunday, or holiday," and enacted the Code Construction Act, Tex. Gov't Code Ann. § 311.001 to 311.035. Tex-

---

[6]Two courts have recognized that "*Kirkpatrick* has been overruled," *Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 63 n.4 (Tex. App. – Houston [14th Dist.] 2016, pet. denied), or "is no longer good law," *Danesh v. Houston Health Clubs, Inc.*, 859 S.W.2d 535, 536 (Tex. App. – Houston [1st Dist.] 1993, writ ref'd). A third case has ruled that Tex. Civ. Prac. & Rem. Code Ann. § 16.072 should be construed similarly to Tex. R. Civ. P. 4 regarding when the last day of a limitations period falls on a day the court is closed. *See Martinez v. Windsor Park Development Co.*, 833 S.W.2d 950, 951 (Tex. 1992) (per curiam). Had § 16.072 been in effect when *Kirkpatrick* was decided there would have been no need to consider Tex. R. Civ. P. 4. With § 16.072, the Texas legislature has spoken directly to the problematic issue in *Kirkpatrick*.

as appellate courts have applied Tex. Gov't Code Ann. § 311.014(c) when calculating a statute of limitations. *See Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 385 (Tex. App. – Dallas 2007, pet. dismissed); *Salahat v. Kincaid*, 195 S.W.3d 342, 343-44 (Tex. App. – Fort Worth 2006, no pet.); *McDaniels v. Mittemeyer*, No. 07-03-0234-CV, 2004 WL 578581, at *1 n.4 (Tex. App. – Amarillo Mar. 24, 2004, pet. denied); *Segura v. Home Depot USA, Inc.*, No. 04-99-00876-CV, 2001 WL 387995, at *5 (Tex. App. – San Antonio, Apr. 18, 2001, no pet.). Section 311.014 provides:

> (a) In computing a period of days, the first day is excluded and the last day is included.
>
> (b) If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday.
>
> (c) If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.

In addition, a "'Year' means 12 consecutive months." Tex. Gov't Code Ann. § 311.005(12).

Calculating limitations periods under the § 311.014 methodology "comports with the method used by a majority of [Texas] courts addressing this issue." *See Salahat*, 195 S.W.3d at 344 (citing various cases including *Pitcock v. Johns*, 326 S.W.2d 563, 565 (Tex. Civ. App. – Austin 1959, writ ref'd)).[7] Additionally, "the method of computing a period set forth in section 311.014(c) incorporates the rule that the first day of a period is not counted, but the last one is." *Segura*, 2001 WL 387995, at *5.

---

[7] As pointed out in *Salaha*t, "by disposing of *Pitcock* with the designation 'writ refused,' the supreme court adopted the court of civil appeals's judgment and reasoning as its own." 195 S.W.3d at 344 n.1 (citing *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 193 (Tex. 2004) (Jefferson, J., concurring); *accord Biggers v. Cont'l Bus Sys., Inc.*, 303 S.W.2d 359, 364 (Tex. 1957) (noting that when the Texas Supreme Court refuses a writ, it thus gives "full approval to the opinion in that case and making the opinion as authoritative as one of its own opinions"). *Pitcock* thus reflects how the Supreme Court of Texas views the issue.

Well before enactment of § 311.014(c), the Texas Supreme Court recognized that "when time is to be computed after an act done or the happening of an event, the day on which the act is to be done or the event is to happen is to be excluded from the count." *Smith v. Dickey*, 11 S.W. 1049, 1050 (Tex. 1889). In other words, "the day on which the cause of action accrued . . . should not be counted in the computation." *Id.* The Texas Supreme Court adopted this principle "to bring about uniformity of decision in this court, and to establish a certain rule, by which parties may in future be guided." *Id.* Because the calculation methodology of § 311.014(c) comports with this long standing, general principle of the Texas Supreme Court, this Court makes a confident *Erie* guess that the Texas Supreme Court would utilize the calculation methodology of § 311.014(c) even when calculating a contractual limitations period.

As this discussion highlights, Texas law regarding the time calculations is very similar to Fed. R. Civ. P. 6(a). Nevertheless, because the federal rule does not expressly apply to state statutes of limitations, courts in diversity cases apply it only when there is no conflict with state practices. Practically speaking, this means that Rule 6(a) is useful in the state limitations context only when "state law is silent on the question of computation or the local measurement rule is ministerial or not substantive in character." *Rothe*, 531 F. Supp. at 192 (citation omitted). Texas has a defined state practice and policy regarding the calculation of its statutes of limitations. Accordingly, the Court applies § 311.014 to calculate the various limitations periods in this case.

Applying § 311.014, "two years, or twenty-four months," from October 5, 2016, is October 5, 2018. *See Salahat*, 195 S.W.3d at 344. While addressing a different two-year limitations provision, the Fifth Circuit applied *Kirkpatrick* and commented that the "Texas intermediate appellate courts . . . have uniformly held that a complaint filed the day after the same calendar day two years after the action accrued is one day too late." *Price*, 431 F.3d at 893 (addressing Tex.

Civ. Prac. & Rem. Code Ann. § 16.003 (requiring certain suits to be brought "not later than two years after the day the cause of action accrues")). The Western District of Texas likewise calculates two years or twenty-four months as ending on the same numerical date two years after it commences. *Vercher v. Knight-Swift Transp. Holdings, Inc.*, No. A-19-CV-00508-LY, 2019 WL 3207804, at *2 (W.D. Tex. July 15, 2019) (recommendation of Mag. J.) *adopted by* unpub. order (W.D. Tex. Aug. 9, 2019); *Singh v. Wal-Mart Stores Inc.*, No. 1:17-CV-1120-RP-ML, 2019 WL 2572569, at *3 (W.D. Tex. Jan. 3, 2019) (recommendation of Mag. J.) *adopted in part by* 2019 WL 1324135 (W.D. Tex. Mar. 25, 2019).

A two years plus one day limitations period would add one day to the calculation used for a two-year limitations period, *see De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 407-08 (5th Cir. 2016) (per curiam) (recognizing that July 12, 2012, to July 14, 2014, is "two years and two days"); *Rodriguez v. State Farm Lloyds*, No. 5:17-CV-161, 2018 WL 3966270, at *2 (S.D. Tex. Aug. 17, 2018) (calculating a two-years-and-a-day period); *Nance v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00538-JRG, 2017 WL 7052146, at *3 (E.D. Tex. Nov. 21, 2017) (same); *Segura*, 2001 WL 387995, at *5 (discussing two years and a day in different context), thus making the contractual limitations period ending on October 6, 2018. However, because that date fell on Saturday, the limitations period "is extended to include the next day that the county offices are open for business." Tex. Civ. Prac. & Rem. Code Ann. § 16.072. Therefore, in this case, the contractual limitations period ended on October 8, 2018.

Consequently, based on Defendant's accrual date, Plaintiffs' contractual claims, including those under Chapter 542, are timely, but their other claims would be untimely. The Court disagrees with Defendant's argument that the contract requires the day of accrual to be counted in the calculation. With respect to their other claims, Plaintiffs argue that the accrual date should

be deferred under two recognized exceptions – the discovery rule and the fraudulent concealment doctrine. They also argue that a lack of notice to Plaintiff Dyer impacts the accrual date for his claims.

### 4. Notice Impacting Accrual Date

Although Plaintiffs argue in their response to the summary judgment motion that the accrual date for Plaintiff Dyer's claims should be delayed because Defendant provided him no notice or payment concerning the insurance claim, *see* Resp. at 14-15, 20, Defendant makes no mention of such potential delay in their reply brief. The Court finds the lack of notice to Dyer on October 5, 2016, dispositive of the motion for summary judgment as to his claims.

Defendant has not carried its burden to show that, as to Plaintiff Dyer, his claims accrued on October 5, 2016, when it sent the denial letter to Silo's President and to the independent insurance agent for Silo. In conclusory fashion, Defendant states that both Plaintiffs were on constructive notice of its October 5, 2016 claim denial based upon the email to "their agent, Ryan Hutchinson." *See* Reply at 6. However, there is no summary judgment evidence to show that Hutchinson was an agent for Dyer. Instead, the evidence presented shows that he was an agent for Silo. *See* Ex. B-8. And the Property Loss Notice submitted by Insurance One Agency, L.C. makes no mention of any agency relationship with Dyer. *See* Ex. B-1. Richardson, furthermore, avers that his agent sent the Property Loss Notice. Decl. Richardson ¶ 9. Defendant has provided no basis for finding that notice to a tenant or an agent of a tenant provides notice to a mortgagee or payee on the policy.

Relying on *Williams v. Allstate Fire & Casualty Insurance Company*, No. CIV.A. H-11-530, 2012 WL 1098424 (S.D. Tex. Mar. 30, 2012), Defendant asserts that the date it sent the denial letter is the date of accrual. *See* Mot. at 10. *Williams* specifically states: "When an insurer

sends the insured a letter denying his claim, the insured's causes of action under the policy usually accrue on the date the letter is sent." 2012 WL 1098424, at *5. But as noted in *Williams*, this is a general rule subject to extension "to the date the insurer closed the claim file" when "there is no written denial of a claim." *Id.* As to Dyer, this exception appears applicable because there is no summary judgment evidence showing that Defendant sent Dyer any written denial of the insurance claim. Further, on the facts presented in this case, there is no basis to impute notice to Silo onto Dyer.

*Williams*, furthermore, did not discuss any state court decisions. And an intermediate Texas appellate decision holds that the receipt date normally sets the accrual date. *See Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co.*, 812 S.W.2d 647, 652 n.3 (Tex. App. – Dallas 1991, writ denied) *disapproved of on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998). In doing so, the court recognized that accrual depends on when the insured learns sufficient facts. *Id.* For the specific issue regarding receipt date and accrual, the Fifth Circuit has cited *Tectonic* with approval. *Bardowell v. Mut. of Omaha Ins. Co.*, 985 F.2d 557, 1993 WL 35709, at *5 (5th Cir. 1993). Although, in a later case, the Texas Supreme Court disapproved of one aspect of *Tectonic*, it did not disapprove of the cited proposition. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518-19 (Tex. 1998). Unless the highest court of Texas has precisely resolved the legal issue of whether the date of receipt is the date of accrual, this Court must make an *Erie* guess as to that issue. *See Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019). And, absent such resolution by the Texas Supreme Court, deference to the intermediate state appellate court decision appears warranted.

Using date of receipt is also buttressed by the recognition of the Texas Supreme Court that an insurer need not use "'magic words' in its denial of a claim if an insurer's determination regarding a claim and its reasons for the decision are contained in a clear writing to the insured." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003). Obviously, a writing, no matter how clearly it may be drafted, is simply meaningless if the insured or other interested person does not receive it or other adequate notice of the writing. The written notice must put the aggrieved party on notice of a legal injury. *Id.* And when "there is no notice of denial," courts use "the claim closure date as the accrual date" and as the required "outright denial that triggered the limitations clock." *De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 408 (5th Cir. 2016) (per curiam).

Based on these cases, the date of receipt appears material to the limitations calculation as to Dyer's claims. Defendant has presented no summary judgment proof that it sent anything to him. Nor has it shown that he had constructive notice on or before October 5, 2016. Viewing the summary judgment evidence in the light most favorable to Dyer, the Court finds no basis to find that Defendant sent him notice of the claim denial on or before October 5, 2016. As to Dyer, the Court finds the general rule noted in *Williams* inapplicable. And, absent applicability of that general rule, courts may default to the date the insurer closed the claim file.

In light of Defendant's failure to show that it sent notice to Dyer or that he had constructive notice of the denial on or before October 5, 2016, the Court has no need to further consider when he received notice of the denial or how the receipt date affects the limitations calculation in this case. The Court also has no need to utilize the claim closure date of November 3, 2016, because Defendant asserts that all claims asserted in this action are untimely by one day only. If Dyer's claims did not accrue prior to October 6, 2016, all his claims are timely by virtue of Tex.

Civ. Prac. & Rem. Code Ann. § 16.072, which extends the limitations period to the next business day, i.e., October 8, 2018. Viewing the summary judgment evidence in the light most favorable to Dyer, the Court finds no basis to find that his claims accrued on or before October 5, 2016.

### 5. Silo's Extracontractual Claims

Given the above rulings that (1) Plaintiffs' contractual claims are timely as a matter of law under Defendant's October 5, 2016 accrual date and (2) Defendant has not carried its burden to show any of Dyer's claims are untimely, the Court turns to the only remaining claims in this case – Silo's extracontractual claims. Defendant has carried its burden to show that, absent Plaintiffs' defenses, these claims accrued on October 5, 2016, when Defendant emailed the denial letter to Hutchinson and Silo's President.

Plaintiffs argue that the denial letter does not constitute an outright denial of the claim as of October 5, 2016. As to Plaintiff Silo, the Court disagrees. Viewing the summary judgment evidence in the light most favorable to Plaintiffs, the Court finds that the email alone clearly informs Silo that Defendant was denying the claim for hail damage to the roof and directs the recipients to review the attachments. There is no question that Silo received the email and attachments. Because the October 5, 2016 email conveyed Defendant's denial of the claim for hail damage to Silo's roof and the reasons for rejecting the claim, the email constitutes an outright denial sufficient to commence the limitations periods. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222-23 (Tex. 2003).

Although Plaintiffs argue that the denial letter does not qualify as an outright denial because Defendant paid the insurance claim regarding the AC unit, Resp. at 12, they provide no legal basis for finding the partial payment affects the outright denial of the other aspects of the insurance claim. Regardless of the partial payment, Defendant clearly denied the insurance claim

as to hail damage to the roof. Further, while Richardson avers that he did not examine the attachments until the next day, such delay on his part does not delay the accrual date of for the statutes of limitations. "Texas does not allow a plaintiff to delay the running of limitations by failing to take action that is within his power." *Aviall Servs., Inc. v. Cooper Indus., LLC*, 694 F. Supp. 2d 567, 577 (N.D. Tex. 2010). As recognized long ago, "if the only act necessary to perfect a plaintiff's cause of action is one to be performed by him, and he is not under legal disability, then he cannot indefinitely suspend the running of limitations by delaying performance of the act." *Cent. Power & Light Co. v. State*, 410 S.W.2d 18, 25 (Tex. Civ. App. – Corpus Christi 1966, writ ref'd n.r.e.).

With an October 5, 2016 accrual date, Silo's extracontractual claims are untimely. To avoid dismissal of these claims as untimely, Silo must show a material factual dispute resulting from either the discovery rule or the fraudulent concealment doctrine. In their amended complaint, Plaintiffs asserted the discovery rule:

> Plaintiffs plead the discovery rule as it pertains to its causes of action against Defendant. The Discovery Rule will defer accrual of a cause of action until Plaintiffs knew or by exercising reasonable diligence, should have known of the facts giving rise to the action. Further, as to the false, deceptive, and misleading acts alleged by Plaintiffs against Defendant, the period of limitation may be extended for a period of 180 days if Plaintiffs prove that failure to timely commence the action was caused by the Defendant's knowingly engaging in conduct solely calculated to induce the Plaintiffs to refrain from or postpone the commencement of the action. *See* TX BUS & COM § 17.565.

Pls.' First Am. Compl. at 16. They also pled "the affirmative defense of Fraudulent Concealment," which they characterize as "effectively estop[ping] Defendant from relying on the defense of limitations if the Defendant was under a duty to make a disclosure to Plaintiffs, but fraudulently concealed the existence of a cause of action from the party to whom it belongs." *Id.* Further, in response to the motion for summary judgment, Plaintiffs reassert the defenses. *See* Resp. at 1-2, 7-20. A general overview of these defenses appears warranted.

While the Texas courts have not always been consistent in differentiating between the two distinct ways to defer the accrual date, the Texas Supreme Court recognized the courts' inconsistency in 1996 and aptly explained the differences. *See S.V. v. R.V.*, 933 S.W.2d 1, 4-6 (Tex. 1996).

> Accrual of a cause of action is deferred in two types of cases. In one type, those involving allegations of fraud or fraudulent concealment, accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run. The other type, in which the discovery rule applies, comprises those cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."

*Id.* at 6 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). To emphasize the general principle that unites prior decisions, it restated that principle as follows:

> [A]ccrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified. This principle, while not expressed in every deferred accrual case, is derived from them and best defines when the exception to the legal injury rule has been and should be applied.

*Id.*

The Fifth Circuit has appropriately recognized that "Texas's 'discovery rule' technically extends the limitations period by postponing the accrual date—not by recognizing accrual and then applying what [some sources describe or] define as tolling." *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 312 (5th Cir. 2019). On the other hand, even though *S.V.* phrased the general principle regarding fraudulent concealment in terms of deferral, rather than tolling, courts continue to describe the principle in terms of tolling. *See id.* (quoting *Gonzales v. Sw. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 58 (Tex. 2013)). The principle is essentially the same regardless of the terminology used to describe it.

Courts have referred to "the discovery rule" as "a very limited exception" to the legal injury rule. *See id.* at 311 (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). This "exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd.*, 58 S.W.3d at 734. When applying the discovery rule, the question is not whether the plaintiff has actual knowledge of a particular claim or cause of action but whether "the plaintiff has 'knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights.'" *Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (quoting *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1141-42 (5th Cir. 1997)).

In addition to the judicially created discovery rule, the DTPA has codified the discovery rule into its limitations provision. *Id.* (citing Tex. Bus. & Com. Code Ann. § 17.565); *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (citing § 17.565 while noting that the "Legislature has adopted the discovery rule in some cases"); *S.V.*, 933 S.W.2d at 22 (noting that the Legislature had enacted "a special statute of limitations for civil actions for sexual abuse," but "did not define accrual for purposes of the new statute, although it certainly could have done so, just as it could have chosen a different starting date altogether [or] prescribed application of the discovery rule as it has done in other statutes," such as the DTPA). The DTPA also includes a fraudulent concealment provision that "forecloses the application of the common-law doctrine of fraudulent concealment to DTPA claims." *Gonzales*, 400 S.W.3d at 59.

Likewise, the limitations provision applicable to claims under Chapter 541 of the Texas Insurance Code codifies the discovery rule and includes a fraudulent concealment provision. S*ee* Tex. Ins. Code Ann. § 541.162(a)-(b). Although this Court knows of no Texas decision which

has held that the fraudulent concealment provision, § 541.162(b), forecloses application of the common-law fraudulent concealment doctrine, the analysis applied to the DTPA provision appears equally applicable to the similar provision within Chapter 541. Making an *Erie* guess, this Court holds that the Texas Supreme Court would make the same holding for the similar statutes. Accordingly, in this diversity case, § 541.162(b), like he DTPA, forecloses application of the common-law fraudulent concealment doctrine.

By codifying the discovery rule, it appears that the legislature has made it always applicable for those causes of action. *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336 (Tex. App. – San Antonio 2000, no pet.). While the Texas Supreme Court has not clearly enunciated that position, it has recognized that the Texas "Legislature has adopted the discovery rule in some cases" and "specifically rejected the discovery rule in others." *See Via Net*, 211 S.W.3d at 313 (citing various statutes including the DTPA). It then noted that, although "the Legislature's silence on accrual in most cases leaves that question for the courts, [the Texas Supreme Court has] restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statute." *Id.* This could be reasonably interpreted to mean that, if the Legislature has adopted or "specifically rejected" the rule in a given context, then the courts would have no need to consider its applicability in that context – it would apply or not based upon the statute itself, but when the Legislature is silent with respect to an asserted claim, applicability of the rule is a question for the courts. It would be that judicial question which would prompt the courts to determine whether the injury is inherently undiscoverable, and the evidence of injury is objectively verifiable.

However, when the plaintiff's injury is inherently discoverable, the Fifth Circuit has found the discovery rule inapplicable and thus "unavailable" to the plaintiff even if codified into a statute. *See Smith*, 932 F.3d at 311-14. In doing so, it relied on the Texas Supreme Court's re-

striction of the rule "to exceptional cases." *Id.* at 312 (quoting *Via Net*, 211 S.W.3d at 313). And when an insured receives an unambiguous denial letter regarding obvious property damage, the case is not exceptional. *See id.* at 313. Following a Texas intermediate appellate court, the Fifth Circuit limits application of the discovery rule, "to those cases where there has been no outright denial of the plaintiff's claims." *Id.* (quoting *Davis v. Aetna Cas. & Sur. Co.*, 843 S.W.2d 777, 878 (Tex. App. -- Texarkana 1992, no writ) (addressing non-statutory discovery rule with respect to claim of an alleged breach of covenant of good faith and fair dealing)). Based upon this binding precedent, federal courts in Texas must apply the inherently discoverable/objectively verifiable two-part test to both statutory and judicially created discovery rules. Perhaps for clarity, it is best not to view the determination as one of applicability for the statutory discovery rules but whether the rule is available for the plaintiff to rely upon so as to delay the accrual date.

Texas courts have found an injury to be "inherently undiscoverable" and thus eligible to delay accrual of statute of limitations "when the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff." *S.V.*, 933 S.W.2d at 7. In other words, an "injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* "This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net*, 211 S.W.3d at 314. Being objectively verifiable means that the injury and the wrongful act "were beyond dispute" and subject to verification through physical evidence. *S.V.*, 933 S.W.2d at 7.

As discussed above, by statutory codification, the discovery rule applies to claims under the DTPA and Section 541 of the Insurance Code. Some courts have held that the rule also applies to claims for breach of the duty of good faith and fair dealing. *See Kitchell v. Aspen Expl.,*

*Inc.*, 562 F. Supp. 2d 843, 855 (E.D. Tex. 2007) (citing *Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86, 91 (Tex. App. – Fort Worth 1993, writ denied)); *Bramell v. Aspen Expl., Inc.*, No. 4:05-CV-384, 2006 WL 8440491, at *5 (E.D. Tex. July 31, 2006) (citing *Abe's Colony Club, Inc.* and *Garza v. C.L. Thomas Petroleum, Inc.*, No. 04-94-00374-CV, 1995 WL 522788, at *3 (Tex. App. – San Antonio Sept. 6, 1995, writ denied and reh'g overruled) (not designated for publication)). But the Fifth Circuit has relied on *Davis* to make an *Erie* guess that the Texas Supreme Court would find the discovery rule inapplicable in cases with an outright denial from the insurance company. *See Smith*, 932 F.3d at 313. The Fifth Circuit has also found the rule did not apply to a claimed breach of good faith and fair dealing. *See Cigna Ins. Co. v. Simmons*, 35 F.3d 561, 1994 WL 500080, at *4 (5th Cir. Aug. 30, 1994). *Davis*, furthermore, directly found the rule inapplicable to a claimed breach of good faith and fair dealing, albeit in a workers' compensation context. *See* 843 S.W.2d at 878.

Because the Court has found that, as to Silo, the October 5, 2016 email and attachments constitute an outright denial of its insurance claim, the discovery rule is not available to Silo given the restriction on its use to cases lacking such an outright denial. This is not the type of case in which the nature of the injury incurred to Silo is inherently undiscoverable. The relevant "question is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights." *Tex. Soil Recycling, Inc.*, 273 F.3d at 649 (citation and internal quotation marks omitted). On October 5, 2016, Silo had enough factual knowledge to cause a reasonable person to diligently inquire into his or her legal rights.

Plaintiffs argue that the discovery rule differs in the context of a fiduciary relationship. Resp. at 9. While conceding that there was no fiduciary relationship between them and the defendant, they argue that "the special relationship between an inured and insurer is similar" and

the Court should consider the special relationship when considering the discovery rule. *See id.* at 10. However, relying on *Via Net*, the Fifth Circuit has found this argument "not compelling" and, given the "clear line between fiduciary and non-fiduciary contracts . . . the Texas Supreme Court has shown no inclination to recognize an intermediate 'special relationship' standard in the discovery rule context." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 440 (5th Cir. 2009). Because "[c]ontracting parties are generally not fiduciaries . . . due diligence requires that each protect its own interests." *Via Net*, 211 S.W.3d at 314 (citations omitted). Silo did not act with due diligence in protecting its own interest.

While "reasonable diligence is an issue of fact," under Texas law, "some circumstances" permit courts to "determine as a matter of law that reasonable diligence would have uncovered the wrong." *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 58 (Tex. 2015). Courts may determine reasonable diligence as a matter of law "when there is actual or constructive notice, or when information is readily accessible and publicly available." *Id.* As a matter of law, Silo did not act diligently when presented with the facts contained within the October 5, 2016 email and attachments.

Similarly, this is not the type of case where the defendant has deceitfully concealed wrongdoing from Silo. On October 5, 2016, Silo had all the information from which to make an informed decision regarding its insurance claim. While some information may have been contained within attachments to the email rather than on its face, Defendant provided Silo the very information which Silo contends was fraudulently concealed. Even if the Court accepts the contention that misrepresentations occurred, any deferral of the limitations period "ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Etan*

*Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (citation omitted). When the plaintiff "could have discovered [the] alleged fraud through the use of reasonable diligence, [Texas courts] hold that, as a matter of law, the doctrine of fraudulent concealment cannot apply to [defer] the statute of limitations." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011).

Moreover, with respect to Plaintiffs' claims under the DTPA and Chapter 541, the fraudulent concealment doctrine is limited to the 180-day provisions of Tex. Bus. & Com. Code Ann. § 17.565 and Tex. Ins. Code Ann. § 541.162(b). Both provisions require plaintiffs to prove that the defendant knowingly engaged "in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action." Even if a defendant's conduct is "obfuscatory and unhelpful," there must be proof that, not only was the conduct intended to prevent Plaintiffs "from bringing a lawsuit," the "sole purpose" of their conduct "was to prevent such a lawsuit." *Silva v. Wells Fargo Bank, N.A.*, No. 1:12-CV-180, 2014 WL 12586396, at *7 (S.D. Tex. Mar. 17, 2014). Plaintiffs have not presented summary judgment evidence to create a genuine dispute of material fact regarding the sole purpose of defendant's conduct. The 180-day extensions of § 541.162(b) and § 17.565 are inapplicable on the facts of this case.

For all these reasons, Plaintiffs have not shown a material factual dispute regarding the availability of the discovery rule or the fraudulent concealment doctrine. Viewing the facts in the light most favorable to Plaintiffs, Silo simply cannot avail itself of either means to defer the accrual date. And, with an October 5, 2016 accrual date, Silo's extracontractual claims are untimely.

### 6. <u>Request for Discovery</u>

In the event that the Court is inclined to grant Defendant's motion as to their extracontractual claims, Plaintiffs request "additional time to seek the necessary discovery to further sup-

port" their position regarding deferral of the limitations period. Resp. at 2. Because Fed. R. Civ. P. 56(d) strictly "requires a party requesting additional discovery as to facts essential to its opposition of a motion for summary judgment to present an affidavit or declaration" stating specific reasons for additional discovery, the absence of such affidavit or declaration makes the request procedurally defective. *Leza v. City of Laredo*, 496 F. App'x 375, 377 (5th Cir. 2012) (per curiam). It is within the Court's discretion to deny such a procedurally defective request. *See id.* Courts, furthermore, properly deny a Rule 56(d) request for discovery when the request "has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016).

The Court finds the Rule 56(d) request for discovery procedurally defective for lack of a required affidavit or declaration. It further finds the request fails to identify specific evidence that may affect the summary judgment ruling. For these reasons, the Court denies the request for additional discovery.

## C. Conclusions Regarding Summary Judgment

The Court has found all of Plaintiff Dyer's claims timely. As to Plaintiff Silo, the Court has found its contractual claims timely, but its extracontractual claims untimely. It has found no genuine dispute of material fact regarding whether either the discovery rule or the fraudulent concealment doctrine defers or delays the accrual date. Accordingly, the Court grants the summary judgment motion in part and denies it in part. It also denies Plaintiffs' request for discovery under Fed. R. Civ. P. 56(d).

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant Allied Property and Casualty Insurance Company's Motion for Summary Judgment (ECF No. 10); **DENIES** Plaintiffs' Motion to Strike Defendant's Summary Judgment Evidence, Exhibit B

(ECF No. 19); and **DENIES** Plaintiffs' Motion for Leave to File Plaintiffs' Surreply to Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 22). It grants the summary judgment motion only with respect to the extracontractual claims asserted by Plaintiff Silo and finds those claims untimely as a matter of law. It otherwise denies the summary judgment motion.

 **SIGNED this 12th day of November, 2019.**

**JASON  PULLIAM**
**UNITED STATES DISTRICT JUDGE**